**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARLOS ROBERTO RIVERA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:26-cv-887 |
| | ) | |
| LEONARD ODDO, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM ORDER**

I.    INTRODUCTION

Presently pending before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Petition") (Docket No. 1) and a Motion to Expedite Habeas Corpus Proceedings and Request for Telephonic Status Conference (the "Motion") (Docket No. 17).  The Petition will be denied, and the Motion will be denied as moot

Petitioner Carlos Roberto Rivera ("Petitioner") is a native and citizen of Honduras. (Docket No. 1, at 1, 3, 5). Petitioner crossed the border as a child and settled in New York. (*Id.*) He was affiliated with the Latin Kings gang and has been convicted of several serious felony offenses in the United States as a result. (*Id.*, at 1, 5-6). Since June 2015, Petitioner has been subject to a final order of removal to Honduras with deferral of removal under the Convention Against Torture Act,[1] (*see* Docket No. 1-6), and Section 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3). (Docket Nos. 1, at 24; 1-7, at 1; 9-2, at 12; 9-2, at 2-3; 9-5, at 1).

Petitioner was taken into custody by Immigration and Customs Enforcement ("ICE") on October 27, 2025 and was detained at Moshannon Valley Processing Center ("MVPC"), located

---

[1]    Petitioner was granted protection from removal to Honduras based on danger he would face as a cooperating government witness against other gang members already sent back to Honduras after their prosecution. (Docket No. 1, at 6).

1

in the Western District of Pennsylvania, pending his removal. On October 31, 2025, ICE served notice upon Petitioner that the government intended to remove him to Mexico. (Docket Nos. 9-3, at 3, 9-10, at 1). On March 27, 2026, ICE attempted to remove Petitioner to Mexico. (*See* Docket Nos. 1, at 9-2, at 11; 9-3, at 3). After Petitioner was flown to San Diego, California upon his imminent removal, Petitioner would not get off the bus, citing a fear of removal to Mexico based on his prior gang association and cooperation with law enforcement. (Docket No. 1, at 8). ICE returned Petitioner to MVPC for an interview with a Department of Homeland Security ("DHS") asylum officer. (*Id. See also* Docket Nos. 9-1, at 2, 7-9;9-3 at 3).

Following Petitioner's unsuccessful result from the Third Country Screening interview,[2] ICE continued its efforts to remove Petitioner to Mexico for the second time. Petitioner was to be removed to Mexico by transferring him to the Port Isabel Service Processing Center ("PISPC") located in Los Fresnos, Texas, on May 15, 2026. (*See* Docket No. 9-1, at 1).  Petitioner refused to leave his room or otherwise cooperate with his removal. Respondents indicate that once he is transferred back to MVPC, ICE plans to prepare a new itinerary to remove Petitioner for the third time.

Although Petitioner has been in ICE custody since October 27, 2025, he has failed to challenge the evidence that he acted to prevent his removal in March 2026 and again in May 2026. The Petitioner has also failed to rebut evidence that the Government is still attempting to remove him to Mexico, but the only impediment is his own noncompliance and lack of cooperation.

II.     DISCUSSION

---

[2]     On April 9, 2026, Petitioner had a Third Party Screening interview with a Department of Homeland Security asylum officer to determine whether Petitioner be sent to Mexico. The asylum officer concluded that Petitioner did not establish that it is more likely than not that he would be persecuted or tortured in Mexico, allowing the Government to resume its attempts to remove Petitioner there. (*See* Docket No. 9-1).

2

The purpose of a writ of habeas corpus is to challenge the legal authority under which an individual is being held in custody. *See*, e.g., *Keitel v. Mazurkiewicz*, 729 F.3d 278, 280 (3d Cir. 2013). The general habeas statute at 28 U.S.C. § 2241 confers jurisdiction on this Court to hear both statutory and constitutional challenges to the lawfulness of Petitioner's detention by ICE. *See*, *e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001).  Section 2241 provides that the writ of habeas corpus shall not extend to a detainee unless "[h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3).

Pursuant to 8 U.S.C. § 1231, the attorney general is directed to remove aliens from the United States within 90 days (the "removal period"). 8 U.S.C. § 1231(a)(1)(A). The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien ". . . conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).  During the removal period, the Attorney General "shall detain the alien…."  8 U.S.C. § 1231(a)(2)(A).

Here, from a purely statutory standpoint, the Petitioner's conduct preventing his own removal has placed him within the extended removal period. Petitioner's lack of cooperation thwarted his removal, otherwise he would have been removed to Mexico by now.

Petitioner further asserts that his due process rights are being violated by his continued detention. (*See* Docket No. 1, at 10-11, 12-15).  Where an alien's due process rights are of concern, "the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Zadvydas*, 533 U.S. at 699. Further, "if removal is reasonably

3

foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period." *Id*. at 700.

To aid in this analysis, *Zadvydas* recognized a presumptively reasonable six-month period of detention under 8 U.S.C. § 1231(a)(1) and (a)(6). *Id*. at 701. After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must sufficiently rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future. *Id*.

Respondents acknowledge that Petitioner is beyond the mandatory 90-day removal period in § 1231(a)(1) and (2), but argue his continued detention is proper under § 1231(a)(6). In particular, Respondents assert that Petitioner is unlikely to comply with the order of removal and that they have met their burden under *Zadvydas* This Court agrees. Petitioner failed to cooperate in his removal by refusing to physically leave the space he occupied when it was time to leave. Whether Petitioner refuses to get off a bus or refuses leave his room, he has thwarted the removal process and, by extension, the very detention he seeks to end in pursuit of this Petition and puts him squarely within the extended removal period because he acted to prevent his own removal. *See* 8 U.S.C. § 1231(a)(1)(C).  The Government meets its burden under *Zadvydas* as evidenced by its two—albeit unsuccessful—attempts to remove Petitioner in the last several months.

Petitioner would have been removed in March 2026, and again in May 2026, but those efforts by the Government were frustrated by his lack of cooperation. The detention in question

4

does not exceed a period reasonably necessary to secure Petitioner's removal. Petitioner actively impeded his own removal despite the Government's efforts to remove him.

Petitioner alternatively seeks release from detention with conditions. However, certain aliens may be held beyond the removal period pursuant to 8 U.S.C. § 1231(a)(6) if it is determined that the alien is not otherwise suitable for release with terms of supervision. That statutory provision provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, *may* be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6) (emphasis added). *See also* 8 C.F.R. §§ 241.4 (Continued detention of inadmissible, criminal, and other aliens beyond the removal period). Petitioner's case was already reviewed by ICE's Headquarters Post-Order Detention Unit at a post-order custody review on February 10, 2026. (Docket No. 9, at 15-16). At that review, Petitioner failed to demonstrate that, if released, he would not pose a danger to the community as evidenced by criminal history. (*See* Docket No. 9, at 15-16; 9-3, at 3; 9-8, at 1). The review further determined that ICE was actively working to locate a third country to effectuate his removal, which was likely to occur in the reasonably foreseeable future. (*Id*.) Petitioner has been afforded the requisite process he claims has been denied to him and his claim of violations of his constitutional rights do not pass muster. Petitioner has chosen continued detention in a federal prison due to his acts to prevent removal rather than cooperate with his release in Mexico. The INA contemplates Petitioner's choice to act accordingly and provides for his continued detention so long as the Government continues taking steps to ensure that his removal remains reasonably foreseeable.

III.    <u>CONCLUSION</u>

The Petition for Writ of Habeas Corpus is denied. Accordingly, the Court enters the following Order:

AND NOW, this 7th day of August, 2026, IT IS HEREBY ORDERED that Petitioner Carlos Roberto Rivera's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Docket No. 1) is DENIED and FURTHER ORDERED that his Motion to Expedite Habeas Corpus Proceedings and Request for Telephonic Status Conference (Docket No. 17) is DENIED as MOOT

The Clerk of Court shall mark this case closed.

*/s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

cc/ecf:  All counsel of record